With the adoption of the Bankruptcy, Abuse Prevention, and Consumer Protection Act to include the definition of return. The return is now defined for dischargeability purposes as a return that satisfies the requirements of applicable non-bankruptcy law, including applicable filing requirements. And timeliness is an applicable filing requirement because the requires that a return be filed by April 15. The definition also provides for what the Fifth Circuit Court of Appeal has called a safe harbor provision pursuant to which a return filed under Section 6020A of the Internal Revenue Code is considered a return, but a return filed under 6020B is not a applicable to Massachusetts. But Massachusetts has requirements that a return must satisfy. It must be filed on a certain form, it must contain certain information, it has to be filed in a certain manner, it has to be signed by the taxpayer, and it has to be filed by April 15 or pursuant to a valid extension. If it's not filed according to any of these requirements, therefore it's not a return for dischargeability purposes. So, Mr. Jefferson, you're saying then if a taxpayer honestly, reasonably filed his return, filed it early, certainly on time, but left the required form off for any one of the numerous filing requirements, then that, any debt unpaid on those taxes becomes non-dischargeable? That's correct, Your Honor. There are various requirements that a return must satisfy, and if it doesn't satisfy the requirement, it's not dischargeable according to the definition provided by the Bankruptcy Code. It just seems odd that it's not that the State won't take a late return. They do take a late return, and they simply assess a penalty for it. They'll take the money from the taxpayer even though it's late. Well, if payment is made with a return. But a return is defined under the Code of Massachusetts Regulation, and it is defined as a taxpayer signed declaration of the tax due, if any, properly completed by the taxpayer or the taxpayer representative on the forms prescribed by the determined whether a document is duly filed have all considered a timeliness requirement. So under the definition of return under the Code of Massachusetts Regulation, a temporal requirement is included in the definition of a return. So a return that is filed late is not a return. It's a late-filed return subject to interest and penalty, which a return for a long time is not. But the only issue in these four cases is the late filing, is it not? That's correct. So these other things that you claim may not qualify are not an issue. Are not applicable to this case. In this case, all the returns were filed years after the due date. In some instances, six or seven years after the applicable deadline. And consequently, the Massachusetts State income tax liabilities for the years for which the returns were not returned for dischargeability purposes. And a number of bankruptcy courts and the only Circuit Court of Appeals that have made a determination on that issue have held that the late-filed return is simply not a return. And I will refer the Court to the various cases of Sheen, Hernandez, Cannon, Links, Craigmore, and of course the McCoy case from the Fifth Circuit Court of Appeals. Well, what do you call it when it comes in a month late? If we went to your clients' records, departments, processing, what do they call that thing that comes in a month late? A late-filed return. So it's a return. Late-filed. It's defined as late-filed return. The U.S. District Court in affirming Judge Hillman's decision not only follows the precedence of those numerous courts and the Fifth Circuit Court of Appeals, but more importantly, they apply the plain meaning and unambiguous term of the definition of the terms of the statute, and this court should affirm the decision. The U.S. District Court, as well as Judge Hillman, took into consideration all the filing requirements under Massachusetts law, whereas the back fails to explain why the statutory provision that requires that the return be filed by April 15th is not an applicable filing requirement. The U.S. District Court also explained that a determination that a late-filed return is not a return does not render the second sentence of the definition under the unnumbered paragraph or Section 523A1B2 superfluous. Section 6020 of the Internal Revenue Code, Section 2, states that all returns filed under A or B would be returns for all legal purposes. Obviously, here Congress wanted to exclude from the definition of return that were filed under Section 6020B, hence the need of the clarification of the second sentence of the unnumbered paragraph. Let me ask you a question that's troubling me about 6020A. Under your interpretation, if someone doesn't file a return, and I'm talking about federal taxes now, if someone doesn't file a return and two years later the IRS says, we're going to do a return for you, but we want your cooperation, the person answers whatever questions and gives cooperation, and the IRS then files the return two years late, you would say under your definition, how you read this, that that is a return? The definition is clear as to Section 6020A and B. Well, same situation except before the IRS even calls up, the taxpayer says, oops, I didn't file my return. Instead of you having to do the work, here it is, and sends in the whole return, which does a lot more than the one who just cooperates. Why would Congress want to treat that taxpayer more harshly under the Bankruptcy Code than the first one? Returns filed under 6020A, if a taxpayer files a return under 6020A, they agree to the immediate assessment and collection. Whereas a return that is just filed late, which is not filed under 6020A, it's just processed, it's not accepted, and it's not, the taxpayer doesn't agree to the immediate collection of the tax. So that's the reason why returns filed under 6020A has priority over other returns. Can you give us any sense of how often does this happen in bankruptcy proceedings that the debtor has not filed a timely return? How many cases? Like, for instance, we have 110 cases in our inventory, for instance, of like where the taxpayer has filed their return late, which represents approximately $4 million. I cannot talk for the other taxing authorities, but it is very common for taxpayers to have late-filed returns. And that was actually one of the issues, I think, that Congress wanted to address with the BAP CPA. Advice would be given to taxpayers to just file all the returns that they hadn't filed, to just file, and then wait the number of years, the necessary number of years, and then having those tax liability discharged. When you say 110, is that 110 late returns by taxpayers who are in bankruptcy proceedings? That's 110 taxpayers. There's more than one return per taxpayer, but there's 110 cases that are currently in bankruptcy that has this issue of late-filed return. The issue is... Could you just go back to Section 8? You indicated that that's a special situation where the taxpayer agrees to immediate assessment. And connection. Is it only immediate assessment? I mean, does the taxpayer have to always come up with the total amount due for the government to accept a Section 8 file? The return, I mean, the Department of Revenue does not have a provision similar to Section 6020 of the IRC. But under 6020A, the commissioner of the Internal Revenue Code and the taxpayer work together in preparing the tax return. And the IRS accepts a return immediately, and the taxpayer in exchange accepts a collection immediately. Is it that the taxpayer accepts responsibility for the tax liability, or is payment expected immediately? Well, payment is not expected immediately, but they expect the collection will start immediately. When generally, in terms of collection, when you do, like, levy, you give notices and you give some time to the taxpayer. Here you do not. It's immediate collection, so levy can be started immediately. I guess I'm not quite understanding your principle distinction between A and B, then. If there's no bargain in it for the government to receive immediate payment. A return filed under B, the taxpayer does not help the IRS whatsoever. It's the IRS who prepares the tax return with the information that they have available. That's the difference between A and B. In A, the taxpayer cooperates with the IRS, when in B, they do not. And in B, they just file it late and may, in fact, make payment. B, they do not try the return. It's the IRS who prepares the return for the taxpayer. The taxpayer doesn't do anything. In A, they do. Right. In B, talking about B. B, the IRS prepares a return for the taxpayer. The taxpayer does not cooperate with the IRS for a return filed under Section 6020B. As to Section 523A1B2, it is not superfluous because it applies to returns that are filed under the Safe Harbor Provision and actually, I would like to refer the court to this decision that was just decided last month. It's in recommendo. It's 2014 Bankruptcy Lexus 4023. In that case, the Southern District of Texas determined that a return that was an issue was a return that was filed under Section 6020A. Therefore, it was a return, although the return was late, but because it was filed more than two years prior to the filing of the petition, it was still dischargeable. So Section 523A1B2, it's still alive and well today, even with a strict construction of the definition of return. I take it you agree that the reading of this provision that you would have us adopt is clearly a change in law from basically any of the cases that existed prior to the enactment of this amendment. I disagree, Judge, because a return that was found not to be a return under the prior law, which was the Beard-Hindenland case, would still not be dischargeable. But it was under the prior law, the mere fact that a return was late did not automatically make it not a return. No, but there was a dispute between the different circuits whether timeliness was a factor that you should look at. But none of it. Can you cite to any case that held that timeliness per se automatically rendered a return? Not under the Beard test. Okay. And so now you're saying that Congress has basically wiped out all of the case law, both sides of that issue, and held that timeliness per se automatically renders a return, not a return. That's correct. And that was the point of the BAP CPA was to remedy abuse, the perceived abuse in the bankruptcy system, and also to restore personal integrity and personal responsibility on the debtors. So requiring that debtors file their tax returns on time to benefit from dischargeability fosters a congressional intent of the adoption of the BAP CPA. Finally, and this is in response to the Fahy brief and also I think the Amicus brief, the issue of whether the Beard test should be the applicable law, the adoption of the definition of tax return superseded the necessity of the Beard test. Also, the issue of the Beard test, it was adopted in the bankruptcy context through the Hinden-Lang case of the Sixth Circuit, which determined that the Beard test is not applicable to state income tax return. Therefore, the Beard test is really not applicable in the case at bar, and as mentioned, the definition of return superseded the need to go back to the Beard test, as the BAP as well as the U.S. District Court has determined. So in conclusion, the Department of Revenue respectfully requests that this Court affirms the judgment of the U.S. District Court and overrules the BAP's decision since the U.S. District Court has adopted the most logical reading of the statute. And if the Court has no further questions, we just rely on the various briefs that were filed in this case. Thank you. Thank you. Mr. Ephraim, good morning. Good morning, Your Honors. Carl Ephraim from Worcester. I represent the taxpayer, Timothy Perkins, if it pleases the Court. I think the Honor's comments indicate that what we are trying to do is to divine the intention of the hanging paragraph. I believe that the Department of Treasury, the IRS, sought to resolve some quixotic tax returns by codifying rulings with regard to 6020A and 6020B. Those are odd situations, and they wanted to ensure that there was no further doubt as to what would be entitled to a discharge. When you say they wanted to do this, you're citing nothing. There's nothing you can say. It only seems that that was the congressional intent. I wish I had some palette upon which I could paint, Your Honor, or Your Honors could paint upon, but there is simply nothing in the record which gives us that direction. It does appear none of the parties are able to cite or us find anything that specifically says why this amendment was added, so we're left to speculate if we want. But let me ask you this. When I look at the legislation as a whole of which this was a part, it seems that there is a legislative record in terms of the report that cites four factors for this legislation as a whole, and it seems all four of those factors all cut in the direction of tightening up on exemptions and debtors. There's nothing in there that talks about plus codifying or clarifying. Is my understanding correct on those four factors? Your Honor, as a bankruptcy practitioner for 35 years, there is no question that it was a congressional intent to eliminate numerous abuses. However, Your Honor, and I am glad you were asked that question, if Your Honor takes a look at the changes in Section 523 at the time that they inserted the hanging paragraph, you'll see that they expanded the types of reports that could be discharged. If I might indulge your Court, read that. I have a red-line copy from 1985, and it indicates with respect to which a return or equivalent report or notice, if required, was not filed or given or was filed or given after the date on which such return, report, or notice was last due under applicable law and after two years before the date of the filing of the petition. So Congress added reports and notices to the statute at the same time they put in the hanging paragraph. So if you take the DOR's position that no late return is a return, then you might ask yourself, well, what is it? I would suggest to Your Honor that if it's not a return, and the bankruptcy appellate panel and Judge Hoffman have ruled that it is, you take a look at it and it's an equivalent report. It's exactly the same report that you would get with a tax return. No one is arguing that a report, an equivalent report or notice, is somehow or another lodged into the language of the hanging paragraph, because the hanging paragraph only defines a return. It doesn't define report or notice. So that, therefore, we actually have the ability, and secondly, Your Honor, just so that it was clear about the expansion, the expansion also included filed or given. Given means handed over. It doesn't necessarily need to be filed. So they expanded the scope of the taxes that may be dischargeable and expanded the delivery system. So we are taking the position, Your Honor, that these returns, which fill all the corners of the beer test, are, if not returns, by the definition of my sister, they are equivalent reports and they are entitled to, Mr. Perkins, on his behalf, and I would argue on behalf of my brothers, are entitled to their discharge. Did anyone make this argument below to the district court or bankruptcy court? This has not, this argument with regard to, and I searched long and wide, Your Honor, I haven't found any case law that picks up on this particular issue. I can't speak to it. That wasn't the question, though. I'm sorry? Was this raised below? Below, Your Honor, I was not present at the hearings with regard to the Gonzales and Browns cases, which were before Judge Hoffman and before the bankruptcy appellate panel. So I can't tell you that no one was present. In your case? In my case, no. Okay. And if Your Honor has no further questions, thank you very much for your attention. Thank you. Mr. Barrett, good morning. Good morning, Your Honors. I'm Andrew Barrett, and I represent Brian Fahey, the taxpayer and appellant in this matter. Clearly, it appears to me, and I hope I can convince this court, that this language in the hanging paragraph has caused a great deal of ambiguity. As a result of that ambiguity, we are here today. The language taken as is, certainly, in my opinion, and as I've briefed and put it forward in my brief, seems to contradict or render superfluous the language earlier in the statute, 523-1A-B2. Can I interrupt you?  Certainly. Am I under the wrong impression that this issue has been decided in other circuits? It has been decided in one circuit, to my knowledge. And how did they decide it? They found that the definition of return includes the timeliness factor. Ironically, the IRS is not a party to this action, Your Honor, and the debts that my client and I believe the other parties who owed monies to the IRS for those debts were discharged in their bankruptcy proceedings because the IRS found those returns to be actual returns. The IRS has the exact same filing timeliness requirements as the DOR has. As you know, the IRS requires that you file your returns by April 15th. No doubt the states of Massachusetts and the DOR probably adopted the same timeliness requirements. Nevertheless, the IRS is not here today arguing that these are not returns and thus non-dischargeable. The IRS accepted these debts as being discharged in the bankruptcy because of 523-1A-B2. They were filed more than two years prior to the petitions. They were filed, and they were filed more than two years prior to the filing of the petitions. And therefore, the IRS accepted them as- Does the statute require us to look at the state law rather than the federal law? The statute argues in the hanging paragraph that a return includes the applicable law of the non-bankruptcy law and the filing requirements thereof. The DOR accepts late-filed returns. My sister stated earlier that when addressed with a question as to what do you call a late-filed return, she used the word return in the definition itself. A late-filed return is a return. It is a late-filed return. The DOR accepts those returns, charges fees and interests, and accepts the payments on those returns once they are filed. I don't see how they can be interpreted as including only a timeliness factor. They are returns for purposes of their filing, and the payments and the fees are made and assessed. But that takes us too far, doesn't it? Because you could say, well, what about a return not filed in accordance with applicable law? Is that a return because I have to use the word return to describe it? It seems to me Congress has clearly told us that a return that is not filed in accordance with applicable law,  But in this case, if the DOR is accepting these returns, they are filed under applicable law, and they're treating them as proper returns. How does it satisfy? Explain to me how your client's return satisfies Massachusetts filing requirements, if one of those requirements was to file the return by April 15th. Well, the requirements are to file them by April 15th, or if they are filed late, they are accepted. And my brother will further detail this, because this was in his hearing under the BAP. Under Section 62C28 of the DOR Code, they are actually referred to as proper returns, even though they were filed late. This leads to ambiguity in the language of the statute, and renders superfluous the earlier portion of the statute, where if a return is filed late, as long as it's filed more than two years prior to the petition, it is dischargeable. So you're saying if we just look at Massachusetts law and ask ourselves what are the filing requirements, we should answer that question by saying the filing requirements are you should file it by April 15, but if you don't, then you better file it soon, and for every day that goes by, you increase your penalties, but you still better file it. Well, I would go further, Your Honor. If the DOR is accepting that late filed return, it is, in fact, a proper return, because they have accepted it. And there is almost a quid pro quo. You are paying extra fees and interest as a result of filing it late, but it has been filed, and they have accepted it, and thus rendered it as a proper return. I assume my time is up. Well, you can use one more minute, as I interrupted you. Again, I would emphasize that the IRS is not party to this action. They discharged these debts, and they have the exact same timeliness rules that the DOR claims they have. But they're free to read their rules as they want, and Massachusetts can read its rules. But it adds to the ambiguity argument, Your Honor. The language has become very ambiguous, and that's why we have the IRS not enforcing it, the DOR trying to enforce it, and that renders the statute and the other portions of it superfluous. If it's ambiguous, you have to read it in favor of the debtor. Otherwise, eventually, if a draconian adoption of the DOR's interpretation is accepted by this court, with all due respect, I would say that it would be draconian and destroy and eviscerate the very purpose of the Bankruptcy Code and the Fresh Start ethos for debtors who are trying to return to a normal life and get out from underneath the debts. If we can never discharge a late-filed tax return debt, then you will never be able to restart your life, and it will render the whole purpose of the code irrelevant. If the Court has no more questions, I'll ask my brother to come up to continue. Thank you. Thank you, Your Honors. Mr. Lipton, good morning. Good morning. Thank you, Your Honors. Marcus Lipton on behalf of the taxpayers, Anthony Gonzalez and John Brown. I want to stick with the topic of the state law definition of a return, because that's really what we're looking for is whether what was filed by the taxpayers was, in fact, did meet the requirements of a return. Now, the parenthetical phrase, applicable filing requirements, I think the operative word is applicable, because that implies that some filing requirements may not be applicable to ascertaining the definition of a return. For instance, taxpayers are required to pay the tax when they file the return, but that requirement is not applicable in determining whether the document is, in fact, a return. Returns get filed without payment all the time. They're still called returns, and nobody's disputing that they would be returns if they were otherwise filed properly. So I think that the timeliness requirement is not applicable at all in determining whether that's a return in itself. The statute and the regulations are very clear in defining the term return as a signed declaration of the tax due on a form prescribed by the commissioner. Now, that's modified by the requirement of it being filed on or before April 15th, but the fact that it's filed after that doesn't make it any less a return. And my sister used the term late-filed return earlier, but that's not an official term that's defined anywhere. That's just logic that a return filed after the applicable date is not filed timely and is, therefore, filed late. Now, under Massachusetts law, a taxpayer can file a return at any time after April 15th, and if the taxpayer does not file their return, the commissioner can notify them to say, you've not filed your return, and I intend to assess you for a tax. If the taxpayer does not file the return within 30 days after that notice, the commissioner can assess them. And after that point, a reported return filed would no longer be considered a return under Massachusetts law. It's now considered a request for abatement. And so I think the question of when was the tax assessed versus the return filed, the tax can be assessed by the taxpayer filing their return or the commissioner assessing it for them. Now, under Section 62, General Chapter 62C, Section 28, it states that if the taxpayer refuses or neglects to, after such notification, to file a proper return, the commissioner may determine the tax due. Now, the words proper return are in the statute in the context of the April 15th deadline has already passed, and the statute still contemplates that a proper return can be filed. So in looking at applicable filing requirements, I don't think that April 15th is applicable to determining whether a document that was filed was a return. It serves all the same purposes as April 14th return on April 16th. That's how the Department of Revenue determines the tax owed. It's on the same form. The only difference is that there's a penalty accrued. But there's no other functional difference between a late filed return and a timely return unless the commissioner has now assessed the tax. And in many of the cases where the courts have ruled against the debtors, that was a defining point is when was the assessment made. Because if an assessment is made prior to the return being filed, then you have a case in which a tax is due for which no return was filed. And under Section 523A1, that would be excluded. The question was asked earlier how many of these types of cases there are. I think the answer was about 115 in this district. This two-year rule is very frequently used, and to eliminate that would present a major change in the Bankruptcy Code and bankruptcy practice. And I don't think that was intended by Congress at all. There's no legislative history to indicate that. And I think the court should look into the intent of this statute, which is not to eliminate this two-year rule. So what was the intent? Because it seems to me we can't read this as consistent in either way with the prior case law, can we? Well, I think that the intent was to sort of clarify this difference between what the debtor's intent was in filing this document. Does it serve a purpose? Because that was the question in the Hinderling and Beard tests. Thank you. Thank you.